Case number 16-6149, USA v. Montai Riley. Argument not to exceed 15 minutes per side. Mr. Ferguson, you may proceed with the appellant. Mr. Ferguson? Good morning. May it please the Court, I am Attorney Claiborne Ferguson, Shelby County, Memphis Bar. I am here on behalf of the appellant, Montai Riley. For purposes of clarification, so I don't lead to any confusion, if I do mention the Riley United States Supreme Court case, I will attempt to call my client Montai Riley to separate the two so that there is no confusion. This is an interesting case that is going to be at the forefront of Fourth Amendment jurors' prudence. With the continued expansion of the powers within our pocket, with our personal communication devices, our cell phones, our PDAs, or whatever name that these will have in the future, the government has a continued and broad way in which to track American citizens. In this case, the government, in an attempt to locate Montai Riley, who was a wanted fugitive from the state of Michigan, initiated or sought an application from a state judge in that state for a pin and trap application. Strangely enough, and outside the scope of the Stored Communications Act statute itself, within the application, and specifically citing and stating to it, quoting it, they requested precision location of mobile devices, GPS location, such that service provider shall initiate a signal to determine the location of the subject's mobile device. And that is the language in which brings us here today, which is that the service provider shall initiate that signal. This is not a case, and can be distinguished from many of the cases the government cites, whether it be the Wigington or the Skinner case, in which this court and other courts have found that the tracking, either through historical cell site technology, which is different than what we're dealing with here today, we're dealing with precise, real-time GPS tracking, and not historical cell site, which is just being able to tell what tower it's pinging off of, in difference of what we have here, which is within a matter of feet, the location at that very moment that the GPS... So the difference from Skinner is that it's just more accurate? No, what's different in those cases is that they're based on prior precedent that there's not an expectation of privacy in the interstate travel of a person. All of those cases involve where there was... I thought you were drawing a technological difference. I mean, there was pinging in Skinner. I am, because I want to rely upon both the Jones and the Riley case, because in Riley, the United States Supreme Court said that you cannot go into electronic devices without a search warrant. And also in Jones, it said you cannot trespass. You cannot trespass in order to install a tracking device. Further, the argument in those cases was not that the GPS signal was the functional equivalent of a tracking device, which would require a Rule 41 showing a problem. You're saying Riley overruled Skinner? I am saying that based on the facts in this case, because of the ability for the provider to go into my client's phone to initiate that signal... I thought that's what pinging was. No, pinging is... Well, the phone is always pinging. The ping is when the phone is searching for the tower. Maybe I misunderstood it, but I thought in Skinner, the phone company sent a ping and got a response. Right, and that's the difference between... when it comes down to whether or not it's a tracking device or, in the concurring opinion with Justice Sotomayor, about her concerns about the invasiveness of GPS tracking. When you ping, the phone is communicating with a tower, and that tower has three arrays, 120 degrees on either side, and it gives you a general location of what tower... That's why I asked if the difference was how accurate it was, and you said no. So now I'm confused. It may be a difference without a distinction. Using the word ping in two different senses, I think, may be the problem. It may be. From what I understand when I read those cases, and my understanding of the technology, it may be that sometimes in older cases the language isn't as precise as it should be, or simply it's going to be a question of what they were doing. When you ping a tower, and it will tell you what tower that phone is communicating with, and it will be within a certain mile distance of that. But isn't the difference that when you're doing that, you or the phone is initiating it? You are pinging to the tower. In this case, the phone company is pinging, if you want to use the same word, to you. You mean by going into the device? Yes. And, of course, that's only if the device is on. Right. Mr. Riley could have defeated this by simply keeping his phone off. He could have, and that's why we go back to the Jones, which is we're talking about trespass. If they simply allowed his phone to communicate, and they pinged it, or they allowed the phone to ping the towers, and they used that to get the general location of where he was, that's different than them going into his phone, which is the trespass, and causing his... So there you're creating, or you're using the word trespass... Yes. ...in an electronic analogy sense. Yes, sir. And I don't know. Have any courts said that it's the equivalent of sticking something under your bumper? I didn't think so. They would not. It would be more analogous to if the government decided to go into your computer without a search warrant, and they were able to communicate through the telephone lines, and they were able to go into your computer, they put in a... Does it not matter the so-called intrusion? Sure. Does it matter, should the defendants be concerned, there's no information about the defendant that comes there other than the location, which is available from towers, from electronics? It's so much different than what's available from the towers. The towers can only put you in a general location in a town or city. It's not something that's going to be able to be used to track real-time movement with precise location that can be used. All this did was say he was at this motel, likely in the vicinity of a motel. Actually, when you use GPS coordinates, it tells you within a matter of feet where the person is standing. What they did is they were able to, because they had a specific area in which in that hotel he was, they were able to go to the hotel. Was there an argument that the officers inquired at the front desk? Absolutely they did. If he had been standing on a street corner, they would have been able to drive directly to that street corner, know what street corner he was standing on, what side of the road he was standing on, and within five to eight feet know exactly where he was standing. That would be obviously no intrusion? That would be an intrusion if the intrusion was from the signal that they initiated into his phone that allowed them to gather and gain that information. So are you not making, I thought, the precedent, and maybe I was only going there but not you, the precedent that if you're tracking someone on the public thoroughfares, then it's okay. So you started to say it would be terrible to find him on the street corner, but he is visible, whereas here, at least in the end, they do ask the desk clerk, but they probably could have found the individual room if there was no desk clerk or at least they could have gotten a lot closer. Yes, sir. Again, when I say that they could locate him on the street corner, I'm not suggesting that if he's standing on the street corner, he's entitled to some kind of expectation of privacy just standing there. They could have also had a photo in the car and driven by and seen him and with the photo said there he is. What I'm saying is because of the increase in this ability of this technology to have real-time tracking with precise location, that that invades the privacy of individuals. So you would say it's unconstitutional even if they had found him on the street corner? Or not? That's what I'm trying to say is the problem that it's inside the privacy of his room or home, which has extra protection, or you just don't like the fact that your phone, when you turn it on, allows them to track you on the public thoroughfares. For purposes of this case, I'm saying because he was inside his room, he's entitled to additional protections. However, I would suggest that based on the dicta in the Jones case, that we're moving towards an environment where the court is taking specific interest in the idea of real-time precise tracking of citizens. But you're not claiming it right now? I'm not claiming that right now. I'm much more limited in argument. To me, the big issue in this case is whether Skinner is distinguished. You have a section in your brief distinguishing Skinner. It doesn't mention this sophisticated distinction between two different kinds of technology, which means it's hard for the other side to respond to. I think in the beginning in my intro, I discussed the differences between cell site technology and GPS precise location. Also, the difference between historical data versus perspective or real-time. I'm not sure that Skinner involved historical data. It was current, wasn't it? It was current. Because it's not historical, right? But it was also cell site. And again, when you go back to the cell site, And in that case, what they did is they were going under the line of precedence that because he was on the interstate or highways, that he was lacking in the expectation of privacy, which is why I do on this case. Where is this distinction in your brief? I guess it's page 7 here. I believe on page 6 we start with the background in which the technology, all modern cell phones are capable of being located in one of two ways, cell site tracking or by global positioning. Later, GPS tracking, space age. And then on 8, you say we're in the minority following Skinner, that he doesn't have a reasonable expectation of privacy, at least in that case where you're on the public streets. Yes, sir. In this case, factually in this case, if we took the rule somewhat taken from Cairo, that you can't, without more of a warrant, get into a person's home or equivalent of a home, could they have found him in this case? That is, did it track close enough to the airport in? Have you looked at the individual reports as to? On the GPS? Right, as to where they found him, how close they found him? Yes, sir. Excluding the room. Suppose I give you that the king of England may not cross the ruined tenement and neither can AT&T, would they still get to the desk clerk? When you plug in the GPS coordinates into the computer, which is a fairly easy search on anyone could do, it is clear that the coordinates in which they were receiving were from within the building. Well, they received a lot of coordinates. I mean, some of them, I did some of that, or my crack staff did. Some of them were before he got into the room. And some of them, in my casual observation, are nearby. That's why I'm asking you, do you have a view or do you concede that if we erase all of the data in the room, they still would have gotten to the airport in? Interesting, yes. I would have to say I believe that if we come down to a ruling that says we're going to exclude everything that was in the room because of the protection within the room, but everything outside the room is okay, I would have to say that it's going to be close enough that the coordinates were within that general area that if they had set up surveillance or if they had done door-to-door canvassing, they would have had the same. All right, that's fine. Thanks. And I will concede that point. I would go back to the fact that my argument basically is that just the initial trespass into the phone violating the Riley case is the issue for the Fourth Amendment in this case. Exceeding my time, the other issues. That argument, though, is not really developed. We have to infer it from your background, right? Infer it from the fact that the issue is that the order says that they can invade my client's phone, that they can initiate. I'm trying to get at where you raise this, and I'm having trouble finding it. I think if you don't raise it, you kind of forego it. It's kind of a sophisticated, interesting argument. But those sophisticated, interesting ones are the ones we like to figure out before we come to oral argument. Right. I believe in there we talk about the police officers in the instance case. We're talking about this argument that it's a physical trespass in this technology, different from the Skinner technology. That's what you're arguing now, right? Yes, sir. And we say in there it says specifically the police officers in the instance case did not or were unable to overcome the allegations that they physically invaded defendant's property in order to conduct the real-time investigation. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. Ashley Brown on behalf of the United States. I think the very most that you've heard in this case today in argument and in the papers filed by the appellant is that he may have had some subjective expectation of privacy in the signal being emitted from his cell phone. I think none of what he's argued, though, answers the question of whether objectively society has any interest in protecting his alleged expectation of privacy in that signal. As the Court is aware, the government has argued three arguments in this case as to why the district court's order should be affirmed. We believe that those arguments are all independent of one another and each provides a sufficient basis for affirming the denial of the motion to suppress. Our first argument is that Skinner and the persuasive authority in the Wiginton District Court decision leads to the conclusion that there was no reasonable expectation of privacy in this case. Skinner holds that there's no reasonable expectation in short-term tracking that occurs in public thoroughfares. As the Court knows in Skinner, the tracking lasted approximately three days. Here we have tracking that lasted seven hours, it appears. He's suggesting now that there's tracking and there's tracking. He is. They're different. How do you respond to that? I'm not aware that in Skinner's opinion it's specific that it's cell site information, so I think that that information is incorrect. I think the tracking appears to be exactly the same because it's pinging in Skinner, which I would disagree with his argument that pinging is sort of multidirectional. I think the way case law describes it, pinging is coming from the cell phone company to your phone. And so he's saying that there was pinging in Skinner and there's also pinging here. He alleges we don't know that, but I think we can take his allegation. Let me try that again, though, and correct me if I'm wrong. As I understood it, in Skinner they're tracking him when he makes a call. Here they're initiating a signal whether he's making a call or not. Am I right about that? To your last point, he's alleging that they're initiating a signal. There's no evidence on that point. I thought that was the whole thing, that we had these GPS coordinates at various times, and those times are times at which the phone company initiates it. They're not times, I mean, they might overlap, but they're not times because they're making a call. Am I right about that? To clarify, Your Honor, I think the confusion is that prospective data can come from two sources. It either comes from the GPS features on the phone itself or it comes from the cell towers, where essentially In our case, they've alleged that it's coming from the GPS. There has been no evidence at this point. But they're coming because the phone company initiates a signal which shows where you are, if your phone is turned on. Right. Okay, am I right about that? I'm disagreeing because I don't think there's any evidence as to that point. I think it's equally possible in this case that AT&T got the GPS information from its cell towers and not from the GPS features on his phone. But they've argued There was, wasn't that going on in Skinner as well? In Skinner, it does say that there's pinging, and it seems that it's coming from, I think the opinion is somewhat unclear as to whether it's coming from the phone or the tower, but in any event, we know that it's pinging. Maybe I missed this, or maybe this is a point not developed, but I didn't think that cell phone tower information could give you the kind of specificity that we do have in the record. As I read it in the record, there are latitude, longitude coordinates that are given to within a few feet, and at least all of the cell tower information cases I've had, they're like quadrants or pie shapes or sectors, if you want to be mathematical, that are much larger than that. Am I wrong about that? I would say so because I think the historical data, which is nonspecific, as you're describing, and can only at most tell you the neighborhood that someone is in, that is not as specific as what we have here. But it's also the case that cell towers can give you prospective information, which are the type of information that we have here. So we simply don't know whether these GPS coordinates came from the tower or from the phone, but I think for purposes of resolving this case, you can accept their argument that it came from the phone, and the conclusion here or the outcome is exactly the same, because he may have had a subjective expectation of privacy, but there's simply no case that says that that is something that objectively society recognizes as being reasonable. Now, is that the statement you made is fairly broad. Do you stand by that statement regardless of whether or not he's a fugitive and regardless of whether or not he's in his home? I think that if these coordinates had been sufficient to identify a home or a hotel room, this could be a different case. But I think the fact here that the coordinates only get the police officers to the hotel lobby essentially and then they then have to do additional work in terms of figuring out exactly what hotel room he's in makes this case different from if he had been identified in his home and makes this case more akin to Skinner. Okay, so at least with that argument, you would be willing for these purposes to go no further than that you're tracking him in the public space. So if we, I mean, again, my understanding from our research is that there are lots of these coordinates that are in the record that are indeed in the room. Right, Your Honor. But you'd be willing to let your argument only go as far as the public spaces. Right, Your Honor. Okay. Doesn't Skinner say by continuously pinging the phone, authorities learned where he was in these various locations? That doesn't sound like pinging a tower. It sounds like pinging a phone. Right, and he's traveling on the road at the time because he's a police officer. So that's something that's not just asking the tower to do something. I mean, maybe technologically that's what they're doing. But the assumption of the case was that the phone was being pinged. Right. And I think the assumption here has been that the phone was being pinged. I'm sorry? How is that different from what was going on here? I think they've argued that the same thing has happened in this case, and there's no argument. There's no evidence to the contrary. So, again, for purposes of this case, I think you can assume that their allegation is correct, but, again, that the outcome would be the same. Okay, thank you. Thank you. And so, as in Skinner, I think you have shorter-term tracking than what was present in Skinner, and it's also public in nature in the sense of, as we've discussed, that it only gets them so far as the hotel lobby and not to a specific hotel room. We've also argued secondarily that the arrest warrants in this case have made it possible for them to do exactly what they did, essentially. There are many cases which say that implicit in an arrest warrant is the fact that And so here, again, because they only get so far as the hotel lobby and then they then have to do the additional work of identifying the hotel room, the arrest warrant essentially is what allows them to then go into the room and execute the warrant and then find the gun in plain view on the bed. And then third, you know, we've argued the good faith exception in this case. We think that there's absolutely nothing which suggests that there was any misconduct on the part of the marshals in Memphis who executed the search warrant, who executed the arrest warrant, excuse me. And so, you know, in the absence of any evidence of wrongdoing on their part, there's simply no basis for suppressing any evidence, even assuming that there may have been some sort of deficiency in the order itself. And unless the court has any further questions. Other questions, Judge Bonds, Judge Cook? Thank you. Thank you. No rebuttal? No, sir. Thank you, counsel. The case will be submitted and Mr. Ferguson, you were appointed under the Criminal Justice Act and we appreciate your thoughtful advocacy and your service under that act. Thank you.